CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

DEC 26 2019

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| DERRICK F.,[1] | ) |
|     Plaintiff, | ) |
| | ) Civil Action No. 4:18-cv-00046 |
| v. | ) |
| | ) REPORT & RECOMMENDATION |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) By:   Joel C. Hoppe |
|     Defendant. | )        United States Magistrate Judge |

Plaintiff Derrick F., appearing pro se, asks this Court to review the Commissioner of Social Security's final decision denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. ECF No. 2. The case is before me under 28 U.S.C. § 636(b)(1)(B). ECF No. 11. Having considered the administrative record, the parties' filings, and the applicable law, I cannot find that substantial evidence supports the Commissioner's final decision. Accordingly, I respectfully recommend that the decision be reversed and the case be remanded under the fourth sentence of 42 U.S.C. § 405(g).

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See*

*Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520(a)(4).[2] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

In May 2015, Derrick filed for DIB alleging that he was disabled by a back injury. *See* Administrative Record ("R.") 13, 49, 149–50, ECF No. 9. Derrick was fifty-eight years old, or a "person of advanced age" under the regulations, when he allegedly became disabled on April 8, 2015. R. 20, 49; 20 C.F.R. § 404.1563(e). Disability Determination Services ("DDS"), the state agency, denied his claim initially on October 13, 2015, R. 49–61, and upon reconsideration on November 23, 2015, R. 62–75. In May 2017, Derrick appeared without counsel and testified at an administrative hearing before ALJ Brian Rippel. R. 27–48. A vocational expert ("VE") also testified at this hearing. R. 44–47.

ALJ Rippel issued an unfavorable decision on November 14, 2017. R. 13–22. He found that Derrick had worked after April 8, 2015—specifically that he engaged in substantial gainful activity ("SGA") from April 25, 2016, through December 31, 2016—but "there ha[d] been a continuous 12-month(s) during which [he] did not engage in substantial gainful activity" after his alleged onset date. R. 15–16. Derrick's "degenerative disc disease of the lumbar spine, lumbar radiculopathy, [and] obesity" were "severe" medical impairments, but they did not meet or equal the relevant listings. R. 16 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.04, 11.14). ALJ Rippel then evaluated Derrick's residual functional capacity ("RFC") and found that he could "perform

---

[2] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

3

the full range of medium work"[3] without additional restrictions. R. 17. This "exertional," or strength, restriction ruled out Derrick's return to his past "heavy exertion"[4] work as a mechanic. R. 20; *see* R. 44–46. Finally, based on this RFC finding and the VE's testimony about Derrick's "advanced" age, "limited" education, and transferable "skilled" work experience, ALJ Rippel concluded at step five that Derrick was not disabled between April 8, 2015, and November 14, 2017, because he still could perform several medium, unskilled occupations that offered a significant number of jobs in the national economy. R. 21–22 (citing R. 44–47; 20 C.F.R. pt. 404, subpt. P, app. 2 §§ 203.12, 203.13).

Derrick promptly asked the Appeals Council to review ALJ Rippel's decision. *See* R. 6, 145, 245–46. His paperwork was assigned to an agency employee on November 22, 2017, but it was either lost or misfiled. *See id.* On March 9, 2018, Derrick submitted another written request for review, noting that the agency "put someone else's name" on his initial request. R. 145; *see* R. 2. On June 5, the Appeals Council notified Derrick that it had "dismissed" his request to review ALJ Rippel's decision because he filed it after the applicable deadline. R. 7–8. A few days later, the employee alerted the Appeals Council that Derrick had submitted his request on November 22, 2017, but that she could not find it in her files. She asked the Appeals Council to consider Derrick's request for review on the merits "as he did submit [it] on a timely basis." R. 6. On June 25, the Appeals Council notified Derrick that it was "setting aside" the dismissal order

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c); *see* R. 44. A person who can meet these "considerable lifting require[ments]" can perform "[a] full range of medium work" only if he or she can "stand[] and walk[], off and on, for a total of approximately 6 hours in an 8-hour workday. . . . [S]itting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("In most medium jobs, being on one's feet for most of the workday is critical."). Medium work also "usually requires frequent bending" at the waist, torso, and/or knees. *Id.*

[4] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d); *see* R. 46.

"to consider additional information," including medical evidence that Derrick submitted after ALJ Rippel issued his decision. R. 1–2. The Appeals Council denied Derrick's request to review that decision, R. 1–4, and this appeal followed.

On January 3, 2019, Derrick hand delivered to the Court his pro se brief explaining why the Commissioner's final decision denying his DIB claim should be reversed or the case remanded. Pl.'s Br. 1, ECF No. 12. Derrick argued the "decision was base[d] on" the Appeals Council's initial conclusion that he "did not file [his] appeal in time." *Id.* He also told the Deputy Clerk that he "re-applied" for disability and had "recently been approved," but that he "was not awarded back benefits." Order of March 6, 2019, at 1, ECF No. 17. I directed Derrick and the Commissioner to each file "a copy of the written decision awarding benefits," as well as any available documents explaining the factual basis for that decision, and a "short supplemental brief addressing what effect, if any, this award has on the Commissioner's final decision denying" the DIB claim at issue in this appeal. *Id.*

Derrick filed a copy of the Notice of Award informing him that he "became disabled under [agency] rules on July 1, 2018," and was "entitled to monthly disability benefits beginning December 2018." Pl.'s Resp., Notice of Award (Dec. 22, 2018), ECF No. 18. The Notice indicates that Derrick alleged a "different" disability date on this subsequent application, but it does not identify that date or say when Derrick filed the application. Derrick did not submit a supplemental brief, and therefore does not suggest that the new award might affect ALJ Rippel's decision that he was not disabled between April 8, 2015, and November 14, 2017. The Commissioner asserts the award "has no bearing" on ALJ Rippel's decision because the agency found Derrick "was not disabled as of the [unidentified] date he alleged on his new application for benefits." Def.'s Resp. 1, ECF No. 19. The Court does not have any information about the

5

"evidence supporting the subsequent decision." *Baker v. Comm'r of Soc. Sec.*, 520 F. App'x 228, 229 n.* (4th Cir. 2013) (per curiam) ("[A] subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)." (quoting *Allen v. Comm'r*, 561 F.3d 646, 653 (6th Cir. 2009)).

### III. Discussion

Derrick's brief raises one very narrow issue on appeal. He asks only that the Court,

> review my claim and date that I file[d] my appeal 11-22-2017 . . . but [the Appeals Council] said I did not file my appeal in time so I think that their decision was base[d] on that I did not get my claim in time that [is] why I need the Court to hear my side.

Pl.'s Br. 1 (citing R. 6–8). In response, the Commissioner correctly points out that the Appeals Council sided with Derrick after the agency employee flagged the administrative mistake in June 2018. *See* Def.'s Br. 2, ECF No. 16. That is why the Appeals Council "set aside" its order dismissing (on procedural grounds) Derrick's request as untimely filed. Def.'s Br. 5 (citing R. 1); *see* 20 C.F.R. § 404.971 (2018). The Appeals Council then denied (on the merits) Derrick's request for review because it "found no reason under [agency] rules to review" ALJ Rippel's decision, including that Derrick's later-submitted medical evidence did "not show a reasonable probability that it would change the outcome" of that decision. R. 1–2. The Appeals Council's denial had nothing to do with timing or filing deadlines. *See* Def.'s Br. 5–6 (citing 20 C.F.R. § 404.970(a)(5)).

When the Appeals Council denied Derrick's request, ALJ Rippel's decision became "the final decision of the Commissioner" that Derrick was not disabled between April 8, 2015, and November 14, 2017. R. 1; *see* 20 C.F.R. § 404.981. It is therefore ALJ Rippel's merits decision, and not the Appeals Council's "procedural decision . . . to deny review, that is subject to judicial scrutiny" in this case. *Davis v. Barnhart*, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005). None of

Derrick's filings in this Court point to any error in ALJ Rippel's written decision or to "any specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim," *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (emphasis omitted). *See* Compl. 1; Pl.'s Br. 1; Pl.'s Resp. 1. Because Derrick is a layperson representing himself, however, I will review the ALJ's written decision to ensure that "it is supported by substantial evidence" in the administrative record "and conforms to [all] applicable and valid regulations," *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017) (citing 42 U.S.C. § 405(g)). *See Coffman*, 829 F.2d at 517. Having "conduct[ed] this deferential review," *Jarvis v. Berryhill*, 697 F. App'x 251, 252 (4th Cir. 2017), I am constrained to conclude that ALJ Rippel's incomplete analysis of Derrick's symptoms contravenes 20 C.F.R. § 404.1529(c), and that his legal error was not harmless. *See Ricky C. v. Soc. Sec. Admin.*, No. 4:17cv20, 2018 WL 3567288, at *3–6 (W.D. Va. June 22, 2018), *adopted sub nom. Cochran v. Soc. Sec. Admin.*, 2018 WL 3551530 (W.D. Va. July 24, 2018); *cf. Dandridge v. Berryhill*, 4:16cv41, 2017 U.S. Dist. LEXIS 193206, at *23–30 (W.D. Va. Nov. 27, 2017) (recommending reversal and remand where ALJ made identical error in a child's disability benefits case), *adopted*, Order, ECF No. 22 (W.D. Va. Dec. 14, 2017).

A.   *The Legal Framework*

"Symptoms" are the claimant's own description of his medical impairment. 20 C.F.R. § 404.1502(i). The regulations set out a two-step process for ALJs to evaluate symptoms as part of the RFC assessment.[5] *Lewis*, 858 F.3d at 865–66; 20 C.F.R. § 404.1529(b)–(c) (2016). "First, the

---

[5] RFC is the claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite his medical impairments and symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted). It is a factual finding "made by the [ALJ] based on all the relevant evidence in the case record," *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011), and it should reflect specific, credibly established "restrictions caused by medical impairments and their related symptoms," including pain, that affect the claimant's "capacity to do work-

7

ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms." *Lewis*, 858 F.3d at 866. Second, assuming the claimant clears the first step, "the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit [his] ability," *id.*, to work on a regular and continuing basis, *see Mascio*, 780 F.3d at 637; *Hines*, 453 F.3d at 565. "The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects," *Lewis*, 858 F.3d at 866, after considering all relevant evidence in his record, *see* 20 C.F.R. § 404.1529(c)(4) (2016). The ALJ cannot reject the claimant's statements about the intensity, persistence, or functional effects of his "pain or other symptoms . . . solely because the available objective medical evidence does not substantiate [those] statements." 20 C.F.R. § 404.1529(c)(2) (2016). The ALJ must give sufficiently specific reasons supported by "references to the evidence" for the weight assigned to the claimant's statements, *Edwards v. Colvin*, No. 4:13cv1, 2013 WL 5720337, at *6 (W.D. Va. Oct. 21, 2013), and, when necessary, he should "explain how he decided which of [those] statements to believe and which to discredit," *Mascio*, 780 F.3d at 640.

B.   *Summary*

Derrick provided the following information in submissions to DDS and his testimony at the administrative hearing. Derrick worked most of his career as a full-time mechanic for various

---

related physical and mental activities," SSR 96-8p, 1996 WL 374184, at *1, *2. *See Mascio v. Colvin*, 780 F.3d 632, 637–40 (4th Cir. 2015); *Reece v. Colvin*, 7:14cv428, 2016 WL 658999, at *6–7 (W.D. Va. Jan. 25, 2016), *adopted*, 2016 WL 649889 (W.D. Va. Feb. 17, 2016). The ALJ has broad (but not unbounded) discretion to determine whether an alleged limitation is supported by or consistent with other relevant evidence in the claimant's record. *See Perry v. Colvin*, No. 2:15cv1145, 2016 WL 1183155, at *5 (S.D. W. Va. Mar. 28, 2016) (citing *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)). Generally, a reviewing court will affirm the ALJ's RFC findings when it is clear that he considered all the relevant evidence under the correct legal standards, *see Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017), and his written decision built an "accurate and logical bridge from that evidence to his conclusion[s]," *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quotation marks and brackets omitted). *See Thomas v. Berryhill*, 916 F.3d 307, 311–12 (4th Cir. 2019).

food-packaging companies. R. 180, 224. He spent six hours a day, five days a week on his feet, "frequently" lifting objects weighing twenty-five pounds, R. 181. He lifted machine parts weighing between twenty and eighty-five pounds. *See id.* He also did nonexertional physical tasks—like stooping, kneeling, and crawling—for about two hours a day. *See id.* In December 2009, Derrick slipped on ice at work and injured his lower back. *See* R. 251–52, 264, 310, 322. By January 2010, he reported "lifting up to 75 pounds without [any] problem." R. 252. An MRI taken in May "indicated no major acute discal pathology." *Id.* That summer, Derrick aggravated his back when he tried to force open a heavy door. R. 252, 254. James Dunstan, M.D., opined that Derrick would "get back to baseline with conservative treatment," R. 254, and told him not to lift more than twenty or thirty pounds until cleared to return to regular work duty, R. 251, 254. Derrick kept working full-time for the next several years, albeit with some chronic back pain. *See* R. 35–36, 252, 260–62, 264, 322–24. In September 2014, he reported feeling "well with minor complaints" of back pain and decreased energy. R. 260–61. His physical exam showed "normal gait, normal posture, 5/5 strength in [all] muscle groups," and full painless range of motion throughout. R. 262.

On April 8, 2015, Derrick lost his job as a mechanic at Trident Foods (formerly Brooks Food Group). *See* R. 35–38, 172, 179. There is conflicting evidence about whether Derrick's medical conditions played some role in him leaving this position. When he filed his DIB claim, for example, he alleged disability from a "back injury" beginning on April 8, 2015, primarily because the "company moved to a different state." R. 179. At the administrative hearing in May 2017, however, Derrick testified that this work caused "so much pain" that he "couldn't halfway deal with it" by the end of the day. R. 36. Yet, he also testified that his most recent job at Bennett's Mechanical—which he "tried to do" full time from April 25 to December 31, 2016—

9

was "even harder" than his job at Trident. R. 35–36, 41. The former required Derrick to stay on his feet "the whole shift" and lift "maybe 75, 80 pounds." R. 40. Derrick did not say how often he lifted heavy objects or mention any nonexertional demands, like stooping or bending. *See* R. 34–42. Doctors prescribed ibuprofen, gabapentin, and hydrocodone to manage Derrick's pain while he was employed at Bennett's Mechanical. R. 42, 194, 228–30, 333, 339, 346. No evidence shows that Derrick needed "any special work conditions, assistance for others, special equipment, irregular hours, authorized rest periods, [or] lower productivity standards." R. 15. Derrick left that job in December 2016 when the company laid off several contractors, R. 35–36, and he certified that he was "ready, willing, and able to work" while receiving unemployment through March 2017, R. 36–37. That May, Derrick testified that he could not do any full-time job because it hurt to stand, and he couldn't "concentrate with the pain in [his] back." R. 41–42. He also tried "not to lift so much" weight because he was "in a lot of pain." *Id.*

\*

The record contains relatively little medical-source evidence from the relevant period. *See generally* R. 264–376. In September 2015, Derrick attended a consultative examination with Ankur Fadia, M.D. *See* R. 264–70. He reported "significant pain with any sort of standing or activities that require[d] him to stand for a long period of time." R. 264; *see also* R. 188 ("[H]e is not limited in . . . walking, however standing for more than three hours can cause back and leg pain."). Derrick had no "difficulty with bathing, dressing, vacuuming, working around the house, sweeping, mopping, and cooking," but lower back and leg pain "limited" his ability to do yardwork without stopping to rest for a few minutes. R. 264; *see also* R. 53, 188 (describing the nature and extent of his daily activities as of September 2015). On exam, Dr. Fadia observed that Derrick walked "without difficulty," did not need help getting on or off the exam table, and had "normal" muscle strength, reflexes, coordination, and range of motion throughout. R. 267–68.

10

His straight-leg raising test was negative, but he could not walk on his toes or heels "due to significant pain." R. 268. Derrick also endorsed "some" pain "whenever he bends down in his thoracolumbar spine." R. 267. X-rays showed "no significant degenerative change[s]" in the lumbar spine. R. 272; *see* R. 54.

Dr. Fadia opined that Derrick's physical exam was "consistent with" chronic low back pain and "possible radiculopathy" on the right "likely secondary to [the] injury sustained" in 2009. R. 268. "Based on [his] objective evaluation," Dr. Fadia expected that Derrick could lift and carry "10 pounds occasionally and frequently," stand and walk about "4 hours or less," and sit "without restriction" during a normal eight-hour workday. *Id.* He also "would have great difficulty bending, stooping, crouching, or squatting." R. 270. Dr. Fadia attributed all restrictions to Derrick's "low back pain secondary to his [preexisting] injury with radiculopathy." R. 268.

DDS physicians R.S. Kadian, M.D., and Donald Williams, M.D., reviewed Derrick's records for the state agency in October and November 2015, respectively. *See* R. 49–61, 62–75. Both opined that Derrick could sit and stand/walk for about six hours each during an eight-hour workday; lift/carry and push/pull twenty-five pounds frequently and fifty pounds occasionally; and frequently climb, balance, kneel, crouch, and crawl. *See* R. 56–57, 70–71. These weight restrictions related to Derrick's "chronic low back pain [status-post] injury." R. 57, 71. They reached different conclusions about Derrick's ability to "stoop," or bend forward at the waist, secondary to lumbar degenerative disc disease. R. 57, 71 ("Claimant has DDD and will be limited in . . . any posture involving the low back."); *see also* R. 54, 68. Dr. Kadian opined that Derrick could do this activity "frequently," R. 57, whereas Dr. Williams concluded that he could do so only "occasionally," R. 71.[6]

---

[6] The Commissioner's rules define "occasionally" as "occurring from very little up to one-third of the time," and "frequently" as "occurring from one-third to two-thirds of the time." *Koisch v. Astrue*, 650 F.

11

In January 2016, Derrick visited a neurology clinic about chronic pain, numbness, and a "stinging" sensation in his back and lower extremities, right greater than left. R. 302. The pain started after he fell and hurt his back in 2009. *Id.* Derrick described experiencing "several exacerbations of pain," but noted that it had "not changed significantly" in the intervening six years. *Id.*; *see also* R. 304. He "noticed that after standing for 3–4 hours, the pain increases not only in [the] right lower back and both thighs, but also across [the] left lower back and to [the] soles of both feet." R. 302. He took Norco and prescription-strength Tylenol as directed. *Id.* Sarah Waddell, NP-C, observed that Derrick exhibited normal cognitive function, gait, posture, coordination, muscle tone, strength, proprioception, and objective sensation to light touch/vibration. R. 303–04; *see also* R. 306–07. Nevertheless, he also had a positive Romberg sign, exhibited "trace reflexes throughout," and reported decreased sensation to light touch in the thighs. R. 304. "Given his report of burning pain in his feet," NP Waddell ordered an "EMG/nerve conduction study to evaluate for possible neuropathy." *Id.* That study showed "bilateral multilevel posterior root irritation with evidence of frank radiculopathy at the L5 level bilaterally, right > left," but "no evidence of a significant peripheral neuropathy." R. 371. There was a "mild sensory neuropathy in the left Sural sensory nerve." *Id.* Peter Konleczny, M.D., opined that the "L5 radiculopathy . . . would not account for his symptoms," R. 307, of chronic lower back pain, numbness to both lower extremities, and "burning pain in [the] soles of both feet . . . after prolonged standing," R. 305. He urged Derrick to lose weight because a "protuberant abdomen can cause irritation of the[] superficial sensory nerves." R. 307.

---

Supp. 2d 475, 488 (E.D. Va. 2009) (quoting SSR 83-10, 1983 WL 31251, at *5–6); *see* R. 56, 70. Put differently, an "occasional" activity usually takes up "no more than about 2 hours of an 8-hour workday," whereas a "frequent" activity accounts for roughly six hours of the workday. SSR 83-10, 1983 WL 31251, at *5–6.

12

Derrick followed up with Dr. Dunstan about his chronic back pain several times between February 2016 and May 2017. *See generally* R. 322–69. Most of Dr. Dunstan's progress notes show that Derrick was obese and reported lower-back pain with radicular symptoms into his lower extremities, but that he transitioned "from sitting to standing with minimal discomfort" and could "move [around] with no difficulty" on exam. R. 325, 329, 333, 339, 346, 353, 360, 367. They do not contain any other relevant objective findings. Dr. Dunstan suspected that Derrick's radicular symptoms were related to his original back injury. *See id.* He typically refilled Derrick's non-narcotic pain medications (gabapentin, ibuprofen) and recommended he continue a home-exercise program. *See id.* Dr. Dunstan also repeatedly said that Derrick could maintain "regular duty" working as a mechanic for Brooks Food Group, R. 325, 329, 333, 339, 346, 353–54.

In September 2016, Derrick told Jonas Rawlins, D.O., that he "recently ha[d] been trying to go back to work but ha[d] been bothered by increasing pins and needles and burning sensation[s] in his right heel." R. 314. He had "a longstanding history of low back pain" since his injury in 2009, but the "radiating pain" and symptoms in his right foot were relatively new. *Id.* On exam, Dr. Rawlins observed that Derrick was morbidly obese and endorsed decreased sensation in the right leg, but that he had full muscle strength in the lower extremities and normal range of motion in the lumbar spine. R. 315. Dr. Rawlins opined that Derrick had "radiculopathy likely involving L5-S1 on the right side." *Id.* He offered Derrick "multiple modalities" to manage his worsening symptoms, all of which Derrick "declined" for various reasons, including cost. R. 315; *see* R. 19. That October, an MRI of Derrick's lumbar spine showed "mild facet arthropathy," but "no canal or neural foraminal stenosis," encroachment, or herniated discs. R. 372. Dr. Dunstan saw "really no change" from the prior year's study. R. 353; *see* R. 372. He

13

prescribed oxycodone for Derrick to take as needed for "severe pain" when he was not on the job. R. 346. In January 2017, Derrick told Dr. Dunstan that his pain was "OK" as long he took Lortab and prescription-strength ibuprofen. R. 367. Islam Saleh, M.D., performed bilateral L2-L5 medial branch blocks. R. 296, 298. Dr. Saleh's notes do not contain any objective findings. *See* R. 296, 298, 374–76.

* *

ALJ Rippel considered this evidence throughout this written decision. *See* R. 15–22. At step one, he found that Derrick worked at the SGA level from April 25, 2016, through December 31, 2016. R. 15–16; *see* R. 161–62, 166–67. Thus, Derrick could not collect DIB for this nine-month period "regardless of how severe" or painful his medical impairments were during that time. R. 16 (citing 20 C.F.R. §§ 404.1520(b), 404.1571). ALJ Rippel noted that his "remaining findings [would] address the period(s) the claimant did not engage in substantial gainful activity," which he defined as the period from Derrick's "alleged onset date [April 8, 2015] through April 24, 2016," exclusively. R. 16; *see* R. 17, 19. It is not clear whether the ALJ's findings also address January 1 through November 14, 2017—i.e., the second period between Derrick's alleged onset date and the ALJ's decision that Derrick did not engage in SGA. *See, e.g.*, R. 18–19 (summarizing medical evidence created between September 2015 and February 2017); R. 22 ("The claimant has not been under a disability . . . from April 8, 2015, through the date of this decision.").

At step two, ALJ Rippel found that Derrick's obesity and lumbar degenerative disc disease with radiculopathy were "severe" medical impairments because they "significantly limit[ed] the ability to perform basic work activities." R. 16. "Basic work activities" include physical functions like standing/walking any distance and lifting/carrying any amount of weight. 20 C.F.R. § 404.1521(b)(1). Derrick's impairments did not meet or equal the listings for

14

"disorders of the spine" or "peripheral neuropathy" because the objective medical evidence did not show specific required findings. R. 16–17 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.04, 11.14).

Turning to Derrick's RFC, ALJ Rippel found that Derrick's medical conditions could reasonably be expected to cause his alleged back and leg pain, but that his "statements concerning the intensity, persistence, and limiting effects" of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." R. 18. According to the ALJ's summary, Derrick alleged only that he was

> unable to stand for longer than three hours because it increases his back and leg pain. Once his pain starts, [he] is forced to rest for up to thirty minutes. The pain affects the lower right side of [his] back and radiates down his right leg. It is sharp at first and then starts to burn. [He] denies any limitations related to walking. . . . [He] uses ibuprofen for his back pain.

R. 17–18 (citing R. 188). These statements come from a DDS employee's notes summarizing a phone call he had with Derrick on September 9, 2015. *See* R. 188. ALJ Rippel also referenced Derrick's May 2017 hearing testimony in finding that Derrick "returned to a physically demanding job as a maintenance mechanic" in April 2016, R. 19; *see* R. 35–36, but he did not mention Derrick's testimony that "try[ing] to do" this job aggravated his chronic pain so much that it now prevented him from doing any full-time work, R. 41–42, 46–47. The ALJ never cited specific contrary "medical evidence and other evidence" or explained "the reasons" why Derrick's statements were "not entirely consistent" with that unidentified evidence when evaluating Derrick's RFC. R. 18; *see* R. 18–20. Instead, he noted only that he "considered" Derrick's "subjective allegations in formulating," R. 20, an RFC for "the full range of medium work" without additional restrictions, R. 17. This RFC was "supported by the objective medical evidence including diagnostic testing and clinical observations upon examination." R. 20.

ALJ Rippel did summarize much of the medical evidence, R. 17–20 (citing R. 56–57, 70–

15

71, 264–70, 296, 298, 302–07, 325, 314–15, 319–21, 339, 346, 360, 372), before weighing the medical opinions, R. 19–20. He gave "significant weight" to the DDS physicians' opinions that Derrick was physically strong enough to perform medium-exertion work because "the evidence of record support[ed] a medium" RFC finding. R. 19. He did not cite any particular "evidence of record," *id.*, but other portions of his decision suggest he relied exclusively on objective medical evidence, R. 20. ALJ Rippel rejected the DDS physicians' opinions about Derrick's specific "postural limitations because such restrictions [were] not directed by" normal physical exams in September 2015 and February 2016; the fact that Derrick "returned to a physically demanding job as a maintenance mechanic" in April 2016; and Dr. Dunstan's opinion that the "MRI taken in October 2016 showed no significant change from the last one taken in 2015." R. 19 (citing R. 267–68, 325, 353). He also rejected Dr. Fadia's opinion that Derrick "would have 'great difficulty' bending, stooping, crouching, or squatting" because it was "ambiguous, relie[d] heavily on [Derrick's] subjective allegations, and lack[ed] specific vocationally relevant functional limitations." R. 20. He gave "little weight" to Dr. Dunstan's comments that Derrick's recommended "work status was regular duty" through May 2017 because those statements also "lack[ed] vocationally relevant functional limitations." *Id.* (citing R. 300–01, 322–69).

C.  *Analysis*

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (internal citation omitted). The pertinent legal requirements here demand that the ALJ articulate specific legally adequate reasons, supported by citations or references to relevant evidence in the record, for the weight he assigned to the claimant's statements describing how his medical condition, including any

16

resulting pain or other symptoms, impacts his ability to work on a regular and continuing basis. *See Lewis*, 858 F.3d at 866; *Mascio*, 780 F.3d at 639; *Bishop*, 583 F. App'x at 68; *Edwards*, 2013 WL 5720337, at *6. While a reviewing court will defer to an ALJ's adverse credibility determination absent "exceptional circumstances," *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 68 (4th Cir. 2014) (citing *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997)), his written decision must at least provide an "accurate and logical bridge from the evidence to his conclusion" that the claimant's statements were not fully credible, *Brown*, 873 F.3d at 269. Meaningful judicial review rarely is possible when the court is "left to guess about how the ALJ" reached that conclusion. *Mascio*, 780 F.3d at 638; *see also Lewis*, 858 F.3d at 866; *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). ALJ Rippel's decision does not meet this standard.

Derrick maintained that he could not work primarily because constant pain in his back and legs severely restricted his capacities stand, lift but "so much" weight, bend through his lower back, and concentrate during an eight-hour day. *See* R. 35–36, 41–42, 46–47, 188. ALJ Rippel agreed that Derrick could not do "heavy" exertion work anymore, R. 20, but he concluded that Derrick could still mange "the full range of medium work" without any postural or mental restrictions, R. 15. Put differently, ALJ Rippel found Derrick could spend eight hours a day, five days a week doing work that involved lifting up to fifty pounds at one time; frequently lifting and carrying objects weighing twenty-five pounds; standing and walking, off and on, for a total of six hours, or "most of the workday"; and frequently bending (stooping) down and forward at the lumbosacral spine. SSR 83-10, 1983 WL 31251, at *6. ALJ Rippel averred that he "considered" Derrick's alleged pain-related limitations in these activities, R. 20, but his written decision neither "'explicitly indicates the weight given'" to those statements nor "contains an adequate explanation of the findings and conclusions drawn therefrom." *Ricky C.*, 2018 WL

17

3567288, at *4 (quoting *Gordon*, 725 F.2d at 235–36); *see, e.g.*, *Hawkins v. Saul*, No. 18-2110, 2019 WL 6492491, at *2 (4th Cir. Dec. 3, 2019) (reversing and remanding where the ALJ "made no findings regarding the severity and impact of various symptoms endorsed by Hawkins and/or described in the medical record that the record at least arguably indicates are related to his medically determinable impairments" and failed to explain how he weighed "evidence that could support more stringent limitations" than those included in the RFC finding).

The ALJ's failure to "cite[] specific contradictory testimony and evidence in analyzing [Derrick's] credibility," *Bishop*, 583 F. App'x at 68, requires reversal and warrants remand for further explanation. First, I cannot determine if ALJ Rippel rejected Derrick's statements "*solely* because the available objective medical evidence [did] not substantiate" them, 20 C.F.R. § 404.1529(c)(2) (2016) (emphasis added). *See* R. 19–20 (citing R. 267–68, 325, 353); Def.'s Br. 7 ("Considering the overall normal examination findings, substantial evidence supports the ALJ's [RFC] assessment that Plaintiff could perform medium-level work." (citing R. 265–70, 303–04, 325)). If he did, then his finding that Derrick's symptoms were "not entirely consistent with the medical evidence," R. 18, standing alone, is insufficient as a matter of law to support his adverse credibility determination. *See Hines*, 453 F.3d at 565; *Ricky C.*, 2018 WL 3567288, at *6; *Dandridge*, 2017 U.S. Dist. LEXIS 193206, at *29–30. The Commissioner does not acknowledge this legal error, and therefore does not suggest that it was harmless. *See* Def.'s Br. 6–7. Given that Derrick's record contains conflicting evidence relevant to the RFC determination, however, I cannot say "it is inconceivable that a different administrative conclusion would have been reached absent the error." *Kersey v. Astrue*, 614 F. Supp. 2d 679, 697 (W.D. Va. 2009) (defining the harmless-error standard in social security cases).

Second, even if ALJ Rippel had other legitimate reasons why Derrick's symptoms were "not entirely consistent with . . . evidence in the record," R. 18, those reasons are "not apparent

18

from the ALJ's decision itself," *McGuinness v. Colvin*, Civ. No. 13-1573, 2014 WL 4854857, at *10 (D. Md. Sept. 29, 2014) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007)). For example, the Commissioner points out that Derrick "returned to full-time work in April 2016." Def.'s Br. 7 (citing R. 34–35, 40–41). ALJ Rippel cited this evidence specifically in explaining why he rejected the DDS physicians' medical opinions that Derrick's RFC should include certain postural limitations involving the lower-back. R. 19. The Commissioner cannot now extend that rationale to Derrick's symptoms generally, *see McGuinness*, 2014 WL 4854857, at *10, and I cannot "hypothesize" other "justifications that would perhaps find support in the record," *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015). ALJ Rippel "should have done [that analysis] in the first instance." *Fox*, 632 F. App'x at 755; *see Monroe*, 826 F.3d at 188. This is not to say the ALJ should have accepted Derrick's statements as true—only that ALJ Rippel failed to explain why, despite having found that Derrick produced "objective medical evidence [of] a condition reasonably likely to cause the pain claimed," the subjective evidence did not show that this pain was "so continuous and/or severe that it prevent[ed] him from working a full eight hour day," *Hines*, 453 F.3d at 565. *See Ricky C.*, 2018 WL 3567288, at *7 n.6.

\* \* \*

I take no position on whether Derrick is entitled to disability benefits for the relevant period. On remand, the Commissioner must consider and apply the correct legal rules to all the relevant evidence in the record; explain how any material inconsistencies or ambiguities were resolved at each critical stage of the determination; and, assuming Derrick cannot show he was disabled based on the medical evidence alone, provide a logical link between the evidence he found credible and the RFC determination.

IV. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge **DENY** the Commissioner's Motion for Summary Judgment, ECF No. 15, **REVERSE** the Commissioner's final decision, **REMAND** the case for further administrative proceedings under the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** the case from this Court's active docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to counsel of record.

ENTER: December 26, 2019

Joel C. Hoppe
United States Magistrate Judge